# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 23-1584V

| | |
|---|---|
| JENNIFER SIGAN,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: June 12, 2025 |

*Leigh Finfer, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Dorian Hurley, U.S. Department of Justice, Washington, DC, for Respondent.*

### FACT RULING[1]

On September 14, 2023, Jennifer Sigan ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a Table shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to her on October 18, 2022. Pet. at 1, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

A dispute has arisen between the parties regarding whether Petitioner's post-vaccination symptoms were limited to the shoulder in which the subject flu vaccine was administered. For the reasons discussed below, I find it more likely than not that Petitioner's post-vaccination symptoms were limited to her left shoulder, as alleged.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I. Relevant Procedural History

Following initiation of the instant claim, the parties attempted to informally resolve damages but were ultimately unsuccessful. ECF Nos. 15-6, 18-19. Respondent filed his Rule 4(c) Report in defense of this case on September 27, 2024. Respondent's Report, ECF No. 20. In it, he made one argument against Petitioner's ability to establish a Table SIRVA claim: that her medical records do not support the conclusion that her post-vaccination symptoms were limited to the vaccinated shoulder. *Id.* at 6. Specifically, Petitioner complained of left arm pain radiating from her shoulder down to her hand on two occasions. *Id.* (citing Ex. 2 at 20; Ex. 3 at 6). This issue is now ripe for consideration.

## II. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19. And, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Indeed, the United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to

document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014). The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### III. Relevant Factual Evidence

I make this finding after a complete review of the record to include all medical records, declarations, and additional evidence filed, and in particular the following:[3]

- Petitioner received the subject vaccine in her left deltoid on October 18, 2022. Ex. 1 at 2; Ex. 2 at 23.

- Ten days later (October 28, 2022), Petitioner saw a treater at her primary care provider ("PCP")'s office complaining of a "poss [sic] flu shot injury 10/18/2022" that involved "limited left arm pain radiate [sic] from shoulder all the way to hand . . . ." Ex. 2 at 20. Petitioner noted that she "fe[lt] the pain in upper arm, pain with extension overhead[,] and ha[d] a weak grip." *Id.* An examination showed decreased range of motion ("ROM"), tenderness of the left bursa, and pain with extension above a 45-degree angle. *Id.* She was assessed with left arm pain and an "adverse effect of vaccine." *Id.* Petitioner was prescribed an oral steroid and was instructed on home exercises that would improve her left shoulder symptoms. *Id.* at 21.

- Petitioner followed up with her PCP on November 22, 2022. Ex. 2 at 14. During Petitioner's blood pressure reading, the PCP noted that her "[blood pressure elevated today in L [sic] arm but this is sore arm after receiving flu

---

[3] While I have reviewed *all* the evidence filed to-date in this case, only evidence related to whether Petitioner's symptoms were limited to the vaccination shoulder will be discussed herein, though other facts may be provided as necessary.

shot." *Id.* The PCP's assessment included "[o]ther specified injuries of shoulder and upper arm," and she was referred to a neurologist for a "[p]ossible SIRVA after flu shot[.]" *Id.* at 16, 19.

- Accordingly, Petitioner saw a neurologist for "evaluation of left shoulder pain and possible SIRVA" on January 4, 2023. Ex. 3 at 6. Petitioner reported she received a flu vaccine on October 18, 2022, and "2 days after the vaccination she started to lose mobility of her left upper extremity and having severe pain with movement on left shoulder." *Id.* She also noted that she "[c]urrently [] continued to have left shoulder pain that would radiate from the top of her the [sic] shoulder down[;] she described pain as a throbbing." *Id.* Petitioner reported decreased ROM and difficulty lifting her arm, but she "denie[d] any numbness, tingling." *Id.* An examination revealed decreased ROM and Petitioner could not lift her arm greater than 45-degrees. *Id.* at 7. Petitioner was assessed with "pain in left shoulder." *Id.* The neurologist recommended an EMG (which Petitioner did not ultimately receive (Respondent's Report at 3, n.2)) and physical therapy ("PT"). *Id.*

- On January 13, 2023, Petitioner saw an orthopedist for "left shoulder pain" that "began on 10/18/22 after [she] received a flu shot." Ex. 4 at 16. Petitioner "describe[d] a stiff, sharp pain located on the lateral side of shoulder." *Id.* She also noted worsening pain with all movement and "issues sleeping due to the shoulder pain." *Id.* Upon examination, Petitioner exhibited tenderness of the bicipital groove of her left shoulder, decreased internal ROM, and positive impingement signs. *Id.* An x-ray of the left shoulder was consistent with left shoulder pain; the treater's impression was "pain in left shoulder" that was "distributed on the left shoulder joint." *Id.* at 17. Petitioner received a steroid injection in the left shoulder. *Id.*

- Petitioner began PT for "pain in left shoulder" on January 20, 2023. Ex. 4 at 69. Her primary complaint was "L [sic] shoulder pain" and she described the location of pain as the "L [sic] shoulder." *Id.* She linked the onset of her pain to the subject flu vaccination. *Id.* An examination of the left shoulder showed limited ROM and diminished strength. *Id.* at 70. Petitioner attended additional PT thereafter to regain left shoulder function and mobility. *See id.* at 43-69.

- Petitioner continued to receive ongoing orthopedic and PT care for her left shoulder through mid-2023, including undergoing an MRI of the left shoulder on May 24, 2023. *See,* e.g., Ex. 4 at 22-28. The MRI showed rotator cuff tendinosis without tear, a SLAP tear of the posterior superior

4

labrum, mild soft tissue edema that "can be seen in the clinical setting of adhesive capsulitis," and mild arthrosis of the acromioclavicular ("AC") joint. *Id.* at 28.

- No other medical record or affidavit/witness declaration evidence regarding whether Petitioner's pain was limited to her left shoulder has been filed.

### IV. Finding of Fact Regarding Symptoms Limited to Vaccinated Shoulder

The third QAI requirement for a Table SIRVA requires a petitioner's pain and reduced range of motion to be "limited to the shoulder in which the intramuscular vaccine was administered." 42 C.F.R. § 100.3(c)(10)(iii).

Respondent contests Petitioner's satisfaction of this element. Respondent's Report at 6. But I find that there is a preponderance of evidence that Petitioner's pain was likely limited to her left shoulder. First, Petitioner's records consistently reflect left shoulder pain and diminished ROM, which are consistent with other SIRVA cases. Petitioner's diagnostic procedures were also limited to her left shoulder, and she received treatment for left shoulder pain and limited ROM specifically. *See,* e.g., Ex. 4 at 16, 22-28, 69.

Second, although there are two stray references to pain extending outside the vaccinated shoulder, the totality of the evidence supports a finding that Petitioner's pain was not only limited to her left shoulder, but *originated* from the shoulder. *Compare* Ex. 2 at 20 (an October 28, 2022 report of "limited left arm pain radiate [sic] from shoulder all the way to hand . . . ."), *and* Ex. 3 at 6 (a January 4, 2023 report of "left shoulder pain that would radiate from the top of her the [sic] shoulder down"); *with* Ex. 4 at 16 (a January 13, 2023 report of left shoulder pain "located on the lateral side of shoulder."), *and id.* at 69 (a January 20, 2023 report of the location of pain as the "L [sic] shoulder.").

In the Program, special masters have found that SIRVA claims featuring complaints of pain *primarily* occurring in the shoulder are valid under the Table, even if there are additional allegations of pain extending to adjacent parts of the body. *K.P. v. Sec'y of Health & Hum. Servs.*, No. 19-65V, 2022 WL 3226776, at *8 (Fed. Cl. Spec. Mstr. May 25, 2022) (holding that "claims involving musculoskeletal pain primarily occurring in the shoulder are valid under the Table even if there are additional allegations of pain extending to adjacent parts of the body").

The mere fact that a claimant has raised complaints of pain elsewhere physically does not automatically disqualify the claim as a SIRVA. Indeed, the gravamen of the third QAI criterion is intended to "guard against compensating claims involving patterns of pain

5

or reduced [ROM] indicative of a contributing etiology *beyond* the confines of a musculoskeletal injury to the affected shoulder." *Grossmann v. Sec'y of Health & Hum. Servs.,* No. 18-0013V, 2022 WL 779666, at *15 (Fed. Cl. Spec. Mstr. Feb. 15, 2022) (emphasis added); *Werning v. Sec'y of Health & Hum. Servs.*, No. 18-0267V, 2020 WL 5051154, at *10 (Fed. Cl. Spec. Mstr. July 27, 2020) (finding that a petitioner satisfied the third SIRVA QAI criterion where there was a complaint of radiating pain, but the petitioner was "diagnosed and treated solely for pain and limited range of motion to her right shoulder"); *Cross v. Sec'y of Health & Hum. Servs.*, No. 19-1958V, 2023 WL 120783, at *7 (Fed. Cl. Spec. Mstr. Jan. 6, 2023) (finding that "despite the notations of pain extending beyond the shoulder, Petitioner's injury is consistent with the definition of SIRVA and there is not preponderant evidence of another etiology"). Resolution of this QAI, like all elements of a Table claim, involves a preponderant balancing of proof – and if that balancing suggests *primarily* shoulder concerns, that is enough.

Here, Petitioner in some isolated circumstances reported instances of pain extending beyond the shoulder, but her injury and diagnoses (specific to shoulder joint pathology) were otherwise consistent with SIRVA, and she was treated accordingly. *See,* e.g., *Durham v. Sec'y of Health & Hum. Servs.,* No. 17-1899V, 2023 WL 3196229, at *11-13 (Fed. Cl. Spec. Mstr. Apr. 7, 2023) (finding "this is not a case where the medical records reflect that the symptoms beyond the confines of the shoulder are incidental to what was otherwise clearly treated as a shoulder injury," as the petitioner showed prominent symptoms of radiculopathy/numbness into the hand and neck, there ultimately was not any confirmed final diagnosis of a shoulder joint pathology, and a cervical etiology was deemed more likely by physicians). The evidence supporting SIRVA-related symptoms of shoulder pain and limited ROM here outweighs the incidental complaints of throbbing pain stemming *from* the shoulder into the upper extremity (that ultimately did *not* receive a separate diagnosis). Petitioner has therefore established this QAI criterion.

**Conclusion and Scheduling Order**

I encourage the parties to promptly attempt an informal resolution of this claim before expending any further litigative resources on the case. If at any time informal resolution (of either settlement or proffer) appears unlikely, given that the claim has been pending in SPU for over one year (having been assigned in December 2023), the parties should propose a method for moving forward, i.e., with a proposed briefing schedule or otherwise stating how they wish to proceed.

Accordingly, **by no later than Monday, July 28, 2025**, the parties shall file a joint status report confirming the date on which Petitioner conveyed, or intends to convey, a reasonable settlement demand and supporting documentation for Respondent's

consideration. **If applicable, the status report may also state whether Respondent wishes to file an amended Rule 4(c) report and stating how much time is needed to submit said report.**


**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master
